**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MARJORIE FRIEDMAN SCHERR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:10-CV-07384 |
| | ) | |
| | ) | Judge Norgle |
| MARRIOTT INTERNATIONAL, INC., *et* | ) | |
| *al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Defendants, Marriott International, Inc., Courtyard II Associates, LP, Courtyard Management Corporation, and Marriott International Design and Construction Services, Inc. (collectively "Defendants"), submit this Memorandum of Law in support of their Motion to Dismiss pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6) because Plaintiff's claims (1) lack Article III standing to seek injunctive relief under the ADA; (2) are barred by Illinois' two year statute of limitations; and (3) fail to state a claim upon which relief can be granted.

## <u>BACKGROUND</u>

On March 19, 2006, Plaintiff suffered a broken wrist when she fell in the bathroom of her ADA-accessible guest room at the Marriott Courtyard hotel in Overland Park, Kansas ("Room 143"). (Compl. ¶ 2.) Plaintiff brought a personal injury suit against Defendants (and others) in this Court. Now, over 2½ years later, Plaintiff seeks nationwide injunctive relief pursuant to Title III of the Americans with Disabilities Act ("ADA") against all Courtyard Marriott hotels for an alleged accessibility barrier with respect to guestroom bathroom doors.[1]

---

[1] Title III of the ADA only provides for injunctive relief. <u>See</u> <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d 724, 730 (9th Cir. 2007). As is often the case in Title III ADA claims (albeit usually with serial litigants), this

**SUMMARY OF ARGUMENT**

By her own admission, Plaintiff has only stayed at one Courtyard Marriott hotel involved in this lawsuit. Thus, she has only allegedly encountered an accessibility barrier at one hotel out of the 57 hotels for which she seeks nationwide injunctive relief. As to this single hotel, Plaintiff fails to allege facts showing that she is likely to encounter the alleged accessibility barrier again; therefore, she lacks standing. Plaintiff also lacks standing to seek injunctive relief with respect to the other "approximately 56 additional Marriott Courtyard hotels … throughout the United States." (Compl. ¶ 1.) A plaintiff cannot obtain nationwide injunctive relief at unnamed and unknown hotels merely by alleging that there is an ADA violation at one hotel which she patronized one time. Article III's case and controversy provision requires that a plaintiff seeking injunctive relief establish that they are likely to suffer injury in the future and prudential considerations prevent any plaintiff from invoking supposed rights of others. For the same reasons that she lacks standing, Plaintiff's claim also fails to state a claim for relief under Rule 12(b)(6). Finally, Plaintiff's claim is barred by the statute of limitations because she filed this suit more than two years after she became aware of the alleged accessibility barrier.

**LEGAL ARGUMENT**

I.      **Standard for Dismissal**

Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Plaintiff bears the

---

case appears to be more about a quest for attorney's fees than for any vindication of the rights of the disabled. See e.g. Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004) ("the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)."). Plaintiff has admitted that she is using this case as a vehicle with which to pursue fees and litigation costs incurred in her underlying personal injury claim. (See Mot. to Reassign ¶ 15 (Docket Entry No. 549, Case No. 1:08-cv-02098) ("if she prevails on her ADA complaint, plaintiff will be entitled to recover her attorneys' fees and costs. Much of the attorney work and expert costs supporting Mrs. Scherr's ADA claims were expended in the litigation before this Court.").)

burden of proof on a Rule 12(b)(1) motion, as she is the party invoking federal jurisdiction.[2] Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998).

When deciding a Rule 12(b)(6) motion to dismiss, a Court must determine whether a plaintiff has pled sufficient facts to establish "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). A complaint "must state sufficient facts to raise a plaintiff's right to relief above the speculative level." Bissessur v. Ind. Univ. Bd. of Trustees, 581 F.3d 599, 602 (7th Cir. 2009).

## II.     Standing

### A.     *Legal Standard*

Federal courts are confined by Article III of the Constitution to deciding only actual cases or controversies. Allen v. Wright, 468 U.S. 737, 750 (1984). Lack of standing - i.e., the Article III "case-or-controversy" requirement - is a defect in subject matter jurisdiction requiring dismissal with prejudice. See Bender v. Williamsport Area School Dist., 475 U.S. 534, 541-42 (1986). Standing is, thus, a threshold question in every case, requiring the court to determine whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant invocation of federal court jurisdiction.

To have standing to seek injunctive relief, a plaintiff must allege more than an injury from a past violation, she must demonstrate that she is likely to be injured by the alleged violation in the future. Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992); Schotz v. Cates, 236 F.3d 1077, 1081 (11th Cir. 2001)("because injunctions regulate future conduct," a plaintiff seeking injunctive relief has standing "only if the [plaintiff alleges] a real and immediate

---

[2] In deciding a Rule 12(b)(1) Motion, a court may look beyond the complaint to other evidence submitted by the parties. See United Phosphorus, Ltd. v. Angus Chem. Co., 322 F. 3d 942, 946 (7th Cir. 2003).

– as opposed to a merely conjectural or hypothetical – threat of *future* injury."); Fair

Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp., 28 F.3d 1268, 1273

(D.C. Cir. 1994)("To pursue an injunction…plaintiffs must allege a likelihood of future

*violations* of their rights… not simply future *effects* from past violations.")(emphasis by court).

Even on a motion to dismiss, "standing cannot be inferred argumentatively from averments in

the pleadings, but rather must affirmatively appear in the record…[I]t is the burden of the party

who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is

a proper party to invoke judicial resolution of the dispute." FW/PBS, Inc. v. City of Dallas, 493

U.S. 215, 231 (1990) (internal citations and quotations omitted).

To establish standing, a plaintiff must prove, *inter alia*, that she has "suffered an injury in

fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b)

actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560.[3]  Mere indignation

does not suffice to establish standing.  United States v. 5 S 351 Tuthill Rd., 233 F.3d 1017, 1022

(7th Cir. 2000).  "Plaintiffs seeking prospective injunctive relief must show a 'real and

immediate threat' of injury to establish the 'injury in fact' requirement." Dempsey v. Pistol

Pete's Beef N Beer, LLC, 2009 U.S. Dist. LEXIS 99606 at *10-11 (D.N.J. 2009).

In the context of ADA claims, courts evaluate whether future injury is probable by

determining whether the plaintiff is likely to return to the defendant's business. See e.g. Access

4 All, Inc. v. Wintergreen Commercial P'ship, Ltd., 2005 WL 2989307 at *3 (N.D. Tex. 2005).

In these circumstances, courts generally look to four factors to determine whether the plaintiff

has alleged a threat of injury that is concrete and particularized: (1) the plaintiff's proximity to

---

[3] A plaintiff must also establish two other elements, including that her injury is fairly traceable to the
challenged action of the defendant, and it is likely, as opposed to merely speculative, that the injury will
be redressed by a favorable decision.  Id.; see also Friends of the Earth, Inc. v. Laidlaw Env't Servs., 528
U.S. 167, 180-81 (2000).

the defendant's place of business; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plans to return; and (4) the plaintiff's frequency of nearby travel. See Dempsey, 2009 U.S. Dist. LEXIS 99606 at *11;[4] Harris v. Stonecrest Care Auto Ctr., LLC, 472 F. Supp. 2d 1208, 1216 (S.D. Cal. 2007); Holt v. Am. City Diner, Inc., 2007 U.S. Dist. LEXIS at *23 (D.D.C. 2007).

With these principles in mind, it is clear that Plaintiff lacks standing to pursue the relief requested, as she has not alleged (and cannot reasonably now allege) that she has any concrete plans to visit any of properties at issue, or to return to the one hotel she has visited. In fact, her pleadings in this and her prior personal injury suit demonstrate conclusively that Plaintiff has neither the inclination or ability to patronize any of the hotels she has sued. Accordingly, she does not have standing, and this Court does not have federal jurisdiction to adjudicate this suit.

**B.      *Plaintiff Cannot Establish Any Intention To Return to the Hotel***

Individuals who encounter barriers at public accommodations have standing to bring claims for injunctive relief only if they show a plausible intention or desire to return to the place but for the barriers to access. See Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001). As amply demonstrated by both her Complaint and court documents from her personal injury lawsuit, Plaintiff fails to meet this threshold standard. Plaintiff alleges in her Complaint that she:

> **would be willing to return** to defendants' Overland Park hotel (and stay at defendants' other Courtyard Marriott hotels throughout the United States **if she has reason to travel to their locations**) only after defendants made the necessary modifications so that ADA-accessible rooms are safe, and in compliance with ADA regulations and accessibility standards.

(Compl. ¶ 7 (emphasis added).)

---

[4] As noted by the Dempsey court, "An analysis of these factors enables the court to appreciate the context of a plaintiff's standing allegations and sheds light on the question of whether the plaintiff is likely to return." Dempsey, 2009 U.S. Dist. LEXIS 99606 at *12.

Clearly, this statement falls far short of having a concrete and particularized plan, or even a general present intention, to stay at any of the hotels. Willingness to return if another (as yet unknown) reason compels Plaintiff to travel to the hotels is far too speculative a basis on which to ground standing. See Holt, 2007 U.S. Dist. LEXIS at *17 ("abstract statement of intent to return … not enough"). Instead, Plaintiff's willingness to stay at a hotel "**if** she has reason to travel to their locations" demonstrates the *absence* of any present intent to return. As noted by the Supreme Court, even a vague intent to return to the place of injury "some day" is insufficient. Lujan, 504 U.S. at 564 ("[s]uch 'some day' intentions - without any description of concrete plans, or indeed even any specification of when the some day will be - do not support a finding of the 'actual or imminent' injury that our cases require."). Here, Plaintiff does not even have "some day" intentions – she alleges merely a "willingness" to stay, itself contingent on the happening of some unknown event providing a reason to travel to the specific location of a particular hotel. This is not sufficient. See Access 4 All, Inc. v. Trump Int'l. Hotel and Tower, 458 F. Supp. 2d 160, 168 (S.D.N.Y. 2006)("the failure to allege an intention or desire to return to the place where a plaintiff encountered an ADA violation or merely alleging an intention to return 'some day' merits dismissal.").

Fatal to Plaintiff's standing is that she cannot make a more definite statement because her physical condition is such that it is very difficult for her to travel at all. She no longer drives, and even if her husband drove her the more than 500 miles to Kansas, she would need caregiver services which are already available at her home here in Illinois. Plaintiff pointed out these facts to the Court in her underlying personal injury claim, in opposing a motion to transfer venue to Kansas, where her injury occurred. Plaintiff stated that:

> **It would be extremely inconvenient, if not prohibitively difficult, to pursue this case in Kansas.** Since the incident, and

> as a result of the injuries I sustained, **it is very difficult for me to travel.** Approximately 80% of the time I am getting around, it is in a wheelchair. **I can no longer drive a car,** walk for any significant distances or stand for any great length of time, **and I rarely travel by airplane**. For me to travel to Kansas to participate in this litigation, I would need my husband to drive me there, which is more than 500 miles away from my home and take approximately 8 hours of driving. Moreover, once there I would need hotel accommodations and daily care-giver services for my particular physical needs. **These accommodations and services are already available at my home.**

Decl. of Pl. ¶ 4 (attached hereto as Exh. A)(emphasis added).

Plaintiff's attorney relied on this Declaration in opposing the motion to transfer venue, stating that Plaintiff, "**Unable to fly to Kansas**, she and her 87-year old husband would have to drive more than 500 miles and 8 hours by car" and that getting "accommodations and services" away from her home "can raise more problems then they solve." Opp'n to Mot. to Transfer Venue, p. 9 (attached hereto as Exh. B)(emphasis added). Plaintiff's counsel even hinted that travel to Kansas was so difficult that "an order requiring Ms. Scherr to so travel to Kansas for the case might well result in dismissal, and would certainly impact on the considerations on how hard she might be able to pursue its resolution." Id.

Judge Kennelly relied on Plaintiff's Declaration in denying the motion to transfer venue to Kansas, citing Plaintiff's inability to travel as the "biggest factor," ruling:

> But the biggest factor I think in this case, which makes it somewhat unique, is a factor relating to convenience of the parties. And specifically the plaintiff is an elderly handicapped woman who is in a wheelchair, and as a result of that, travel to Kansas for trial, I think in my estimation, would be overwhelmingly difficult.

Tr. of Proceedings Before Judge Kennelly 5 (attached hereto as Exh. C).

Having used her inability to travel as the primary reason for keeping her personal injury litigation in Illinois, Plaintiff cannot now pretend that she has any concrete or particularized

intention of returning to Kansas, whether she "would be willing" to return or not. A brief analysis of the four factor test demonstrates that Plaintiff has not alleged a threat of future injury.

First, with respect to Plaintiff's proximity to Defendants' place of business, Plaintiff has admitted that she resides more than 500 miles – more than an eight-hour drive for her 87-year old husband – from the one hotel she has actually visited. Exh. A ¶ 4. Her proximity to any of the supposed "approximately 56" additional Marriott Courtyard hotels "throughout the United States" is impossible to ascertain, as Plaintiff has failed to plead the location of any of these hotels. (Compl. ¶ 1.) Thus, this factor does not support Plaintiff's standing.

Second, Plaintiff's past patronage also weighs against a finding of standing, as Plaintiff makes no claim that she has visited any of the hotels (other than her single visit to the Overland Park hotel), and there is no allegation that she ever stayed at that hotel before or since. In any case, a single visit to a hotel admittedly more than 500 miles away from home is an insufficient basis on which to grant standing to request a nationwide injunction against "approximately" 57 hotels. See Wintergreen Commercial P'ship, Ltd., 2005 WL 2989307 at *4 (noting that plaintiff's "alleged past injury – suffered during a single visit to a … Holiday Inn in April 2005 – alone is not sufficient."). See also Harris, 472 F. Supp. 2d at 1216 ("purely speculative and conjectural" to infer plaintiff would ever return to gas station hundreds of miles from home).

Third, given that she avers "it is very difficult for me to travel," it is clear that Plaintiff does not have any concrete plans or even remote possibility of ever visiting any of the alleged 57 hotels against which she seeks injunctive relief. Even if she could make such an allegation, and had the ability to travel, in the face of her prior sworn Declaration, such a statement would be implausible.[5] Lujan, 504 U.S. at 564 (speculative "some day intentions" to return are

---

[5] Keep in mind that Plaintiff has never visited any of the 56 properties; thus, we are not here dealing with a professed desire to return, it is merely "some day" speculation that at some point the Plaintiff might

insufficient). *Cf*. Brother, 331 F. Supp. 2d at 1374-75 (noting plaintiff "has professed an intent to return to all fifty-four of the properties he has sued. This is simply implausible."). Further, even if Plaintiff did travel to any of these as-yet unspecified locations, there are surely other hotels in these areas which she could choose to patronize. See Wintergreen, 2005 WL 2989307 at *4 (plaintiff needs evidence or allegations that he "would have need to stay at this particular hotel"). Given that she has already indicated the tremendous difficulty in travel, it is clear that the definiteness of any plans weighs strongly against a finding of standing. See Rosenkrantz v. Markopoulos, 254 F. Supp. 2d 1250, 1253 (M.D. Fla. 2003)(finding lack of standing where plaintiff lived hundreds of miles away from hotel and traveled only twice a year); Deck v. Am. Hawaii. Cruises, 121 F. Supp. 2d 1292, 1299 (D. Haw. 2000)(standing did not exist when the plaintiff only stated that she would "look into" another trip on cruise line, and this was conditional on her mother's health).

Indeed, a finding of standing here would be premised more on wishful thinking than on any possibility that Plaintiff might ever actually travel to any of the hotels, as (according to the pleading), the hotels are located "throughout the United States." Coverdell v. Dep't of Social & Health Servs., 834 F. 2d 758, 766 (9th Cir. 1987)("A mere physical or theoretical possibility that the challenged conduct will again injure the plaintiff is insufficient to establish a present case or controversy."). Plaintiff cannot undertake the extensive travels necessary to visit these hotels, and even if she could, any visit is conditional as Plaintiff would be willing to do so only if she had some other independent "reason to travel to their locations." Exh. A ¶ 4. See Equal Rights Center v. Hilton Hotels Corp., 2009 U.S. Dist. LEXIS 126645 at *10 (D.D.C. 2009) (dismissing

---

have reason to travel to the location of one of these hotels, where she might choose to stay. A Plaintiff must allege more than encountering a barrier in order to establish standing. Lujan "requires that the party seeking review be himself among the injured." Lujan, 504 U.S. at 563.

individual plaintiff's claims for lack of standing because the "possibility that her rights will be violated … is too remote to constitute a 'real and immediate' future violation of her rights.").

Finally, there is likewise no basis to find that Plaintiff travels with any frequency to Kansas or anywhere else nearby any of the hotels. Indeed, given that she averred that travel to Kansas for her personal injury claim would be "extremely inconvenient, if not prohibitively difficult," any assertion that Plaintiff frequently travels nearby any of the hotels would contradict her previously professed inability to travel and rest on nothing more than sheer speculation. As noted in one recent decision:

> Of critical importance to this determination is the fact that Plaintiff simply does not allege that he will ever return to [the business], let alone provide the Court with any definitive plans to do so. To be sure, Plaintiff alleges that he "desires" to return once the architectural barriers are removed, but mere desire is insufficient to show a real and immediate threat of a concrete and particularized injury.

Dempsey, 2009 U.S. Dist. LEXIS 99606 at *12.

The foregoing analysis demonstrates that Plaintiff has not and cannot make out any real or immediate threat of harm sufficient to support injunctive relief. On these facts, it would be impossible for this Court to conclude that the Plaintiff is likely to be injured by alleged conditions at 56 hotels around the country that she has neither visited nor intends to visit. See Moreno v. G&M Oil Co., 88 F. Supp. 2d 1116, 1117 (C.D. Cal. 2000); Steger v. Franco, Inc., 228 F.3d 889, 893 (8th Cir. 2000); and Deck, 121 F. Supp. 2d at 1299.

### C. *Plaintiff Cannot Rely Upon the "Futile Gesture" Exception*

Perhaps sensing these infirmities, Plaintiff asserts that the ADA does not "require a disabled person such as plaintiff to engage in a futile gesture" once she knows (as plaintiff here alleges) that defendants do not intend to comply with the Act. (Compl. ¶ 21.) While a plaintiff

need not engage in the "futile gesture" of visiting a building containing known barriers that the owner has no intention of remedying,[6] she must at least prove actual knowledge of the barriers and show that she would visit the building in the imminent future but for those barriers. Steger, 228 F.3d at 892. See also Hilton Hotels, 2009 U.S. Dist. LEXIS 126645 at *20 (emphasizing that the scope of plaintiffs' standing is limited to those hotels with known accessibility problems and where the plaintiffs have claimed a specific and imminent desire to return); Clark v. Burger King Corp., 255 F. Supp. 2d 334 (D.N.J. 2003) (in case where plaintiff sought injunction against all Burger King locations across the United States, court held that he lacked standing to challenge locations where he did not know of any accessibility barriers).

It has already been demonstrated that Plaintiff would not, indeed cannot, visit any of the buildings, with or without any alleged barriers. As Plaintiff has not pleaded any concrete intent to return to any of these hotels, her claim that doing so would be a "futile gesture" must fail. Deck, 121 F. Supp. 2d at 1300-01 ("ADA plaintiffs who seek injunctive relief must still demonstrate that they themselves face a real and immediate threat of future harm."); Steger, 228 F.3d at 893 (a plaintiff must show that he "would visit the building in the imminent future but for those barriers."). Moreover, as discussed further in Section II, *infra*, Plaintiff cannot show any "actual knowledge" of any barriers at the hotels, as she has never been to any of them.

### D. *Plaintiff Cannot Assert Standing to Vindicate Injuries of Others*

Prudential concerns also weigh heavily in favor of dismissing the action for lack of standing. Prudential standing principles prohibit a litigant from raising a third party's legal

---

[6] Here, the Complaint provides no basis for assuming the owner has no intention of remedying the alleged defect. In fact, Plaintiff does not even allege that Defendants are the owners of the hotels, stating instead that the 56 hotels are "owned, operated, managed and/or controlled by defendants[.]" (Compl. ¶ 1.) As noted previously, without knowing which hotels Plaintiff is seeking an injunction against, Defendants cannot even ascertain the accuracy this determination. Defendants reserve the right to seek dismissal of any or all entities if appropriate at any time the allegations are more specifically advanced.

rights.  Access 4 All v. Oak Spring, Inc., 2005 WL 1212663 at *6 (M.D. Fla 2005)("In the absence of a showing that [plaintiff] brought this suit to personally benefit from a successful outcome he lacks Article III standing to maintain the case").  Here, it is clear that Plaintiff has brought her suit on behalf of others, supported by the fact she has never been to any of the other hotels.  (See Compl. ¶ 4 ("additional injuries will be sustained by **other** disabled guests"); ¶ 14 ("and **other** disabled guests") and ¶ 15 ("**other** disabled hotel guests are about to be subjected…")(emphasis added).)  However, the ADA "does not permit private plaintiffs to bring claims as private attorneys general to vindicate other people's injuries."  McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003); Moreno, 88 F. Supp. 2d at 1117 (plaintiff not permitted to assert claims on behalf of others similarly situated with respect to 82 other gas stations that the plaintiff had not visited); Hilton Hotels, 2009 U.S. Dist. LEXIS 126645 at *20 (same); and Steger, 228 F.3d at 893 (explaining that granting plaintiff standing to seek relief for every ADA violation on behalf of all disabled individuals would expand the standing doctrine beyond the limits of Article III).

## II.     Plaintiff Fails To State a Claim Upon Which Relief Can Be Granted

In Bell Atl. Corp. v. Twombly,  the Supreme Court clarified the question of what facts a plaintiff must plead in order to state a claim under Rule 8 of the Federal Rules of Civil Procedure.  550 U.S. at 553-56.  The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Particularly relevant to this case, the Court further opined that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 555. The Court observed that "**the pleading must contain something more. . . than. . . a statement of facts that merely creates a suspicion [of]**

- 12 -

**a legally cognizable right of action** . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (internal citations and quotations omitted) (emphasis added). As Plaintiff failed to allege which hotels she seeks injunctive relief for, where they are located, and the specific barriers to accessibility at each location, Plaintiff has failed to state a claim upon which relief can be granted, and the Complaint should be dismissed. Twombly, 550 U.S. at 553-56; and Fed. R. Civ. P. 12(b)(6).

The Complaint is premised on the assumption that a "spring hinge" located in the bathroom door of Room 143 is a "door closer" and not compliant with the ADA. (Compl. ¶¶ 25, 70-75.) This allegedly non-compliant door is alleged to have knocked Plaintiff down almost five years ago, resulting in her injuries. (Compl. ¶¶ 39-44.) Notably, even assuming that the use of a spring hinge is in and of itself violative of the ADA (something not even assumed by Plaintiff),[7] it is clear that any comparable allegations against the other 56 hotels are entirely speculative. For instance, the Complaint makes the hugely unsupported leap from Plaintiff's assertion that the spring hinge in Room 143 was noncompliant, to the suggestion that "spring hinges" were used in all 56 other (unnamed) hotels, and that the supposed use of a spring hinge in these other 56 locations makes the doors in each location noncompliant. This theory collapses on itself before one can finish reading the Complaint – Plaintiff alleges that:

> A spring hinge is a specific type of door closer, even if it does not comply with ADA requirements. **In the case of the bathroom door in Room 143, the spring hinge does not allow sufficient time under ADA-requirements**... An ADA-compliant closer that incorporated a delayed action mechanism would have given Ms. Scherr additional time to exit the bathroom…. **Due to non-**

---

[7] According to Plaintiff, "Defendants did not take reasonable efforts to ensure that the spring hinges designed and installed into their hotels complied with these door closing speeds for closers." (Compl. ¶ 38.) Plaintiff alleges that "During the related litigation, closing speeds of the bathroom door in Room 143 were measured using appropriately precise, reliable and standardized equipment." (Compl. ¶¶ 62, 63.) There are no corresponding allegations of measurements, much less "non-compliant closing speeds" for any of the doors at the other 56 hotels.

> **compliant closing speeds** on the bathroom door, Room 143 –
> though designated as being "ADA-accessible" – is not and was not
> safe or accessible for an individual with physical disabilities.

(Compl. ¶ 73 (emphasis added).)

According to the Complaint, then, the use of a "spring hinge" in a door does not in and of itself violate the ADA; in fact, Plaintiff alleges only that the one in Room 143 did, "due to non-compliant closing speeds…" Id. Even assuming that all of the other 56 unnamed hotels – which have never been visited by Plaintiff – all utilize the exact same "spring hinges" in their ADA-accessible bathroom doors, there is no plausible allegation in the Complaint that any of the doors suffer from the same (alleged) defect, namely "non-compliant closing speeds." Certainly, Plaintiff has not pleaded any facts from which the Court could even infer knowledge as to the closing speeds of these doors. Accordingly, any assertion of supposed barriers at other hotels rests on nothing more than speculation and Plaintiff's claim should be dismissed under Rule 12(b)(6).[8]

### III.     Plaintiff's Claims are Barred By the Statute of Limitations

Even if Plaintiff had standing to maintain her lawsuit, her claim must still be dismissed as barred under the applicable two-year statute of limitations. Because the ADA does not contain a specific statute of limitations, the most appropriate state limitations period applies; in Illinois this

---

[8] Indeed, it is clear that Plaintiff has staked her request for an injunction on the notion that every other of the 56 hotels' bathroom doors in ADA accessible rooms is exactly like the one in Room 143. But in the personal injury case, it was made clear to Plaintiff's counsel that this is not the case. In the personal injury litigation, Plaintiff deposed Jefferson Thomas ("Thomas"), who informed counsel that each of the design firms that did work on some of the hotels created their own prototype for all of their projects, and that he did not know for certain whether spring hinges were used in all of the hotels. Exh. D, pp. 145-148. Counsel then asked Thomas "if we wanted to find out whether or not there were some modifications from the prototype and that some of these hotels didn't use spring hinges in their ADA-accessible guestrooms, how would you go about finding that out?" Exh. D, p. 156. Thomas replied that "You'd have to go to every individual property and look." Id. Thomas then testified that "every property is slightly different," that "things change from the prototype documents to bid documents," and that "the general contractor may even change things," before stating "So, the only one way of really finding out they were definitively used is to actually go to every individual property and find out." Exh. D, pp. 157-58.

is two years.  See Soignier v. Am. Bd. of Plastic Surgery,  92 F.3d 547 (7th Cir. 1996)(applying Illinois' two-year statute of limitations to Title III claim for injunctive relief).  Plaintiff claims to have been injured by the bathroom door in Room 143 on March 19, 2006.  (Compl., ¶ 42.) Plaintiff's prior personal injury suit filed on March 17, 2008 makes clear that she was fully aware of the alleged faults with the door and hinge.  Exh. E ¶¶ 7, 11.

The instant suit was not filed until November 16, 2010, more than two and a half years after Plaintiff admittedly knew of the supposed barrier to access at the hotel; accordingly, any claim based on alleged barriers in Room 143 is barred by the statute of limitations.  Soignier, 92 F.3d at 547.  See also Frame v. City of Arlington, 616 F.3d 476, 488-89 (5th Cir. 2010)(granting motion to dismiss Title II ADA injunctive relief claim based on two-year statute of limitations).

## CONCLUSION

Wherefore, for the foregoing reasons, Defendants request that this Honorable Court dismiss the complaint with prejudice and for any other relief which may be just and proper.

Respectfully Submitted,


By:     /s/ Mark M. Trapp

Mark M. Trapp  (ARDC No. 6276066)
EPSTEIN BECKER & GREEN, P.C.
150 N. Michigan Ave., 35th Floor
Chicago, Illinois 60601
(312) 499-1425
(312) 827-9525 (fax)
mtrapp@ebglaw.com

Attorney for Defendants

Date:  January 18, 2011