

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARJORIE FRIEDMAN SCHERR, | ) | |
| | ) | 10 C 7384 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARRIOT INTERNATIONAL, INC., ET AL. | ) | Hon. Charles R. Norgle |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is Defendants Marriot International, Inc., Courtyard Management Corporation, Courtyard II Associates, LP, and Marriot International Design and Construction Services, Inc.'s (collectively, "Marriot") Motion to Dismiss Plaintiff Marjorie Friedman Scherr's ("Scherr") Complaint. For the following reasons, Marriot's motion is granted in part and denied in part.

## I. INTRODUCTION

This case presents a difficult question of standing to sue under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq. ("ADA"). On March 19, 2006, Scherr was severely injured when she was struck by a self-closing spring-hinged bathroom door in an "ADA-accessible" guestroom at a Courtyard Marriot in Overland Park, Kansas (the "Overland Park Marriot"). Pursuant to Title III of the ADA, Scherr requests: (1) a declaratory judgment that the Overland Park Marriot was and remains in violation of the ADA; (2) injunctive relief against Marriot, including an order requiring Marriot to alter the self-closing spring-hinged doors in ADA-accessible rooms in fifty-seven of its Courtyard hotels throughout the United States (including the Overland Park

Marriot); and (3) costs, attorneys fees, and expenses. Marriot moves to dismiss Scherr's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Scherr: (1) lacks Article III standing to seek injunctive relief under the ADA; (2) is barred by the statute of limitations; and (3) fails to state a claim upon which relief can be granted. For the following reasons, Scherr's allegations are sufficient to warrant moving forward with respect to injunctive relief against the Overland Park Marriot, but not with respect to the additional fifty-six Courtyard Marriot hotels.

## A. Facts

The Court takes the following facts from the allegations in Scherr's Complaint and Declaration, which is attached as Exhibit 2 to her Opposition Memorandum.[1] In March 2006, while residing in Cook County, Illinois, the seventy-six-year-old Scherr made a reservation to stay at the Overland Park Marriot for a family trip to the area. Because she has a neuro-degenerative disease and relied on a walker at the time, Scherr requested an ADA-accessible room. The Overland Park Marriot assigned Scherr to Room 143, which it assured her was "ADA compliant." Compl. ¶ 40. On March 19, 2006 at approximately 12:30 a.m., Scherr attempted to leave the bathroom in Room 143 while using her walker. She exited the bathroom through a self-closing spring-hinged door. After opening the door out into the room with her right hand, Scherr proceeded through the threshold with her walker. The door then quickly closed behind her, striking her body and causing her to fall to the floor. As a result of the fall, Scherr broke her right wrist and had to go to the hospital, where she underwent surgery. The impact also

---

[1] Scherr's Declaration contains particularized allegations of fact to support standing. For the reasons set forth in Section II(A) below, the Court considers these statements as part of the factual record.

injured her hip. Scherr spent two weeks in a Kansas hospital and rehabilitation center. Since the accident, she has been forced to use a wheelchair.

Scherr has twenty-nine relatives living in or around Overland Park, Kansas and she has a long history of travel to the area. Since her injury, Scherr has traveled to Overland Park four times and stayed in ADA-accessible rooms at hotels similar to the Overland Park Marriot, such as the Drury Hotel and the Hampton Inn. Scherr states that the "particular location [of the Overland Park Marriot] is nearby many of my family members, and – other than the self-closing bathroom door – I have found Marriot's hotels to provide me with the type of accommodations I desire and need when I travel away from my home." Pl's Mem. in Opp. to Def's Mot. to Dismiss, Ex. 2 ¶ 4.

In August 2010, Scherr's cousin announced her engagement to be married on May 29, 2011, in the Overland Park area.[2] Scherr's "save the date" announcement was postmarked August 30, 2010. Scherr declares that, since receiving the announcement, "I have expected to attend the wedding this May and plan to stay in an ADA-accessible room at a hotel in or around Overland Park." Id. ¶ 15. While she was "willing to stay" at the Overland Park Marriot for this wedding, she was "unwilling to do so unless the rooms are made safe for use by disabled guests." Id.

Scherr further declares that, since May 2006, she has taken eleven trips in addition to her four trips to Overland Park, including trips to Kentucky, Tennessee, Texas, South Carolina, California, Georgia, and Florida, among others. Id. ¶ 8. On all but one of the eleven trips, Scherr stayed in ADA-accessible rooms at a wide range of hotels. She only stayed in one Courtyard Marriot, however, in August 2006 in Highland Park, Illinois.

---

[2] The Court observes that the wedding date has come and gone.

3

In 2004 and 2005, Marriot commenced a major project to renovate fifty-seven of its Courtyard hotels throughout the United States, including the Overland Park Marriot. "In all 57 hotels, defendants chose to design and install a spring-hinged door closer without a delay mechanism in place of a door closer on the bathroom door of each purportedly 'ADA-accessible' guestroom." Compl. ¶ 35. Scherr contends that, over the course of the renovation, Marriot "did not take reasonable efforts to ensure that the spring hinges designed and installed into their hotels complied with [ADA rules on] door closing speeds for closers." Id. ¶ 38. An "ADA Analysis Summary" of the Overland Park Marriot, performed by design firm Leo A. Daly, contained an asterisk next to Scherr's Room 143 that stated "Existing guestroom[s] that are partially complaint [sic] will need to [be] brought up to full compliance." Id. ¶ 55. According to Scherr, Marriot's legal department had dictated a policy "to not enforce ADA requirements in connection with the design and construction of Marriot hotels and hotel renovations." Id. ¶ 60. Marriot's design and construction department was "told they were 'not the ADA police.'" Id.

**B. Procedural History**

On March 17, 2008, Scherr filed a negligence action, arising from the same facts as the present case, in the Circuit Court of Cook County. Marriot removed the case to the Northern District of Illinois (Kennelly, J.) based on diversity of citizenship. On July 26, 2010, Scherr moved to amend her negligence complaint to include a claim under Title III of the ADA. Her request was denied. On October 13, 2010, Judge Kennelly denied the parties' motions for summary judgment in the negligence case, see Scherr v. Marriot Int'l, Inc., No. 08-C-2098, 2010 WL 4167487 (N.D. Ill. Oct. 13, 2010), and the case

subsequently settled.³ On November 16, 2010, prior to the settlement of the negligence case, Scherr filed the instant ADA case against Marriot. Marriot now moves to dismiss Scherr's Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

## II. DISCUSSION

### A. Standard of Decision

#### *1. Rule 12(b)(1)*

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." Alicea-Hernandez v. Catholic Bishop of Chi., 320 F.3d 698, 701 (7th Cir. 2003). The burden of proof is on the party seeking to establish jurisdiction and the court is "free to weigh the evidence to determine whether jurisdiction has been established." United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003) (en banc). Since standing is an "an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Id. A plaintiff's standing must exist at the time the complaint is filed. Access 4 All, Inc. v. Chi. Grande, Inc., No. 06-C-5250, 2007 WL 1438167, at *4 (N.D. Ill. May 10, 2007) (citing Lujan, 504 U.S. at 571, n.4). "The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method

---

³ The record is silent as to breadth and depth of the settlement in the negligence case.

of obtaining compliance with the Act.'" Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209 (1972)).

In addition, for purposes of determining standing, district courts "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995) (quotations omitted); see also Warth v. Seldin, 422 U.S. 490, 501 (1975) ("[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."); United Phosphorus, Ltd., 322 F.3d at 946 ("[I]f . . . the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion."). While the Court is not certain why Scherr did not include the statements from her Declaration in her Complaint, it will accept them as true at this stage of the proceedings. See Chi. Grande, Inc., No. 06-C-5250, 2007 WL 1438167, at *8.

### 2. *Rule 12(b)(6)*

Marriot also moves to dismiss under Rule 12(b)(6) for failure to state a claim. "A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957)). Under federal notice-pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Put differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "Even after Twombly, courts must still approach motions under Rule 12(b)(6) by construing the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." Hecker v. Deere & Co., 556 F.3d 575, 580 (7th Cir. 2009) (quotations omitted).

**B. Standing**

Standing is an essential component of the case-or-controversy requirement of Article III of the Constitution. See Lujan, 504 U.S. at 560. There are three well-settled constitutional standing requirements: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and defendant's conduct; and (3) the injury must be likely to be redressed by a favorable decision. Id. at 560-61. The party invoking federal jurisdiction bears the burden of establishing these elements. Id.

At issue in this case is whether Scherr demonstrates injury in fact at the time she filed her complaint. To establish injury in fact when seeking prospective injunctive relief, plaintiffs must allege a "real and immediate" threat of future violations of their rights. City of L.A. v. Lyons, 461 U.S. 95, 102 (1983). The Supreme Court has explained that

> "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." And the affiants' profession of an "intent[t]" to return to the places they had visited before – where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species – is simply not enough. Such "some day" intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the "actual or imminent" injury that our cases require.

Lujan, 504 U.S. at 564 (quoting Lyons, 461 U.S. at 102) (internal citations omitted) (emphasis in original). That is not to say, however, that concrete intentions to return to the location of injury are required to establish standing. Distinguishing Lujan, the Supreme Court later held that a plaintiffs' "conditional statements – that they would use the nearby North Tyger River for recreation if [defendant] were not discharging pollutants into it – [cannot] be equated with the speculative 'some day intentions' to visit endangered species halfway around the world that we held insufficient to show injury in fact in [Lujan]." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 184 (2000). In other words, where plaintiffs allege injury in the form of "current deterrence," the Supreme Court does not require "the same specific intentions to return." Fiedler v. Ocean Props., Ltd., 683 F. Supp. 2d 57, 69 (D. Me. 2010); see also Betancourt v. Federated Dep't Stores, 732 F. Supp. 2d 693, 709 (W.D. Tex. 2010) (recognizing that the Supreme Court distinguished Lujan when, in Laidlaw, it "recognized deterrence as an injury in fact sufficient to confer standing for prospective relief").[4]

---

[4] Because this case concerns standing in the context of an ADA claim, it is noteworthy that "[w]here federal statutory rights are at issue . . . Congress has considerable authority to shape the assessment of standing." Kyles v. J.K. Guardian Security Servs. Inc., 222 F.3d 289, 294 (7th Cir. 2000). "[A]lthough it may not lower the threshold for standing below the minimum requirements imposed by the Constitution, Congress can extend standing to the outermost limits of Article III." Id. (citation omitted). Further, Congress has the power to "enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." Id. (quotation omitted). Thus, "whether a person has Article III standing to sue under [a particular statute] depends in great measure on the particular rights

8

Against this backdrop, the parties dispute the proper analysis to apply in this case. According to Marriot, Title III ADA plaintiffs plead injury in fact if they "show a plausible intention or desire to return to the accommodation but for the barriers to access." Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo., 458 F. Supp. 2d 160, 168 (S.D.N.Y. 2006) (quotation omitted); see also Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd., No.3:05-CV-1307, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005) ("In the context of ADA claims, courts evaluate whether future injury is probable by determining whether the plaintiff is likely to return to the defendant's business.").

Scherr, by contrast, invokes what the Ninth Circuit has recently labeled the "deterrent effect doctrine." Under this doctrine, an ADA plaintiff "can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 950 (9th Cir. 2011). The Chapman court explained that:

> Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.

Id. at 949. Put differently, injury in fact under the ADA is satisfied where a person "has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation." Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1136-37 (9th Cir. 2002); see also Doran, 524

---

conferred by th[at] statute[ ]." Id. Courts may therefore look to the rights conferred by the ADA in assessing whether Scherr has suffered an injury in fact. See Betancourt, 732 F. Supp. 2d at 707.

F.3d at 1041 ("Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent."); Disabled Ams. for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005) ("'[A] disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA' and 'who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA' suffers actual or imminent harm sufficient to confer standing.") (quoting Pickern, 293 F.3d at 1138); Steger v. Franco, 228 F.3d 889, 892 (8th Cir. 2000) ("Although plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying . . . they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers."); Betancourt, 732 F. Supp. 2d at 709 ("[I]n an ADA Title III case, the risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is 'able and ready' to visit the facility once it is made complaint."); Trump Int'l Hotel & Tower Condo., 458 F. Supp. 2d at 168 ("In the context of the ADA, awareness of discriminatory conditions, and the avoidance of a public accommodation because of that awareness, is injury in fact."); Access for Am., Inc. v. Associated Out-Door Clubs, Inc., 188 F. App'x 818, 820 (11th Cir. 2006) (Barkett, J., dissenting) ("Especially in the disability context, a 'specific-date/set-plans' standard would produce patently absurd results, and would almost certainly place plaintiffs in a Catch-22 so far as their credibility is concerned."); Equal Rights Ctr. v. Hilton Hotels Corp., No. 07-C-1528, 2009 WL 6067336, at * 3 (D.D.C.

Mar. 25, 2009) ("Disabled individuals do not have to claim that they would return to a place with known accessibility barriers simply to establish that they are likely to experience a future violation of their rights."). When the public accommodation being sued is located far from the plaintiff's home, the plaintiff, in order to prove deterrence, must also "demonstrate[] an intent to return to the geographic area where the accommodation is located." D'lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1037 (9th Cir. 2008).

The "deterrent effect doctrine" – supported by the reasoning of Ninth, Eighth, and First Circuits – is gaining support. See, e.g., Betancourt, 732 F. Supp. 2d at 699-710 (providing detailed, multi-faceted analysis of support for "deterrent effect" approach); Fiedler, 683 F. Supp. 2d at 68-74 (same). Absent guidance from the Seventh Circuit, and finding the arguments and authority in favor of the "deterrent effect doctrine" persuasive, the Court applies the doctrine to this case.

### 1. *Standing to Sue the Overland Park Marriot*

Marriot argues that Scherr's statement that she "would" return to the Overland Park Marriot is the type of "some day" intention that the Supreme Court found insufficient in Lujan. If "intent to return" were the exclusive standard, Marriot might be correct.[5] As set forth above, however, Scherr may also establish injury in fact under the

---

[5] See, e.g., Shotz v. Cates, 256 F.3d 1077, 1082 (11th Cir. 2001) (granting motion to dismiss ADA claim for lack of standing because plaintiffs "have not attempted to return, nor have they alleged that they intend to do so in the future"); Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004) (dismissing ADA claim for lack of standing where plaintiff lived 280 miles from hotel, lacked a "continuing connection" to the hotel, never attempt to stay at the hotel prior to the injury, and only made a reservation to the hotel after filing the complaint); Rosenkrantz v. Markopoulos, 254 F. Supp. 2d 1250, 1253 (M.D. Fla. 2003) (dismissing ADA claim for lack of standing where plaintiff who lived hundreds of miles from hotel at issue had no concrete plans to return and had little meaningful connection to the geographic area); Harty v. Simon Prop. Grp., L.P., 10-CV-03408, 2010 WL 5065982, at *2 (S.D.N.Y. Dec. 7, 2010) (denying standing where plaintiff identifies vague plans to return to geographic area but provides no concrete reasons why he wished to return to the particular accommodation); Wintergreen Commercial P'ship, Ltd., No. 3:05-CV-1307, 2005 WL 2989307, at *4 (granting motion to dismiss for lack of standing

"deterrent effect doctrine." From the cases applying that approach, the Court finds that, to satisfy the injury in fact requirement, Scherr must allege that: (1) she is aware of existing barriers at the Overland Park Marriot; (2) she would return to the Overland Park Marriot if the barriers were removed; and (3) she intends to return to the Overland Park area. On this record, accepting all material allegations as true, Scherr satisfies these elements.

As to awareness of existing barriers, Scherr knew from discovery in the related negligence case that, as of April 2010, the allegedly unsafe conditions at the Overland Park Marriot had not been corrected. While Marriot disputes Scherr's actual knowledge of the conditions at the additional fifty-six Courtyard Marriot hotels, it does not dispute her actual knowledge of the conditions at the Overland Park Marriot.

Scherr also establishes an intent to return to the Overland Park area. She has twenty-nine relatives living in or around Overland Park and, between May 2006 and May 2010, visited Overland Park four times.[6] Moreover, as of August 2010 – before her ADA claim was filed – Scherr had set plans to attend her cousin's wedding near Overland Park and planned to stay at an ADA-accessible hotel in the area.

Finally, Scherr alleges that, if the Overland Park Marriot were made accessible, she would like to stay there on future trips to the area. She avers that the "particular location" of the Overland Park Marriot is "nearby many of my family members" and that, with the exception of the bathroom doors, she has found the hotel to "provide me with the

---

where plaintiff visited the hotel one time, did not travel often to the geographic area, and provided no evidence of plans to return to the hotel prior to filing the complaint).

[6] Marriot argues that Scherr cannot reasonably allege that she will return to the Overland Park Marriot because she stated, in response to Marriot's motion to transfer venue to Kansas in the related negligence case, that it would be "extremely inconvenient, if not prohibitively difficult, to pursue this case in Kansas." This argument is without merit. For Scherr, there is a difference between pursuing a trial in Kansas and traveling there for a weekend to visit family. In any event, on a motion to dismiss, the Court accepts all well-pleaded facts as true, and draws all inferences in Scherr's favor.

type of accommodations I desire and need when I travel away from my home." Pl's Mem. in Opp. to Def's Mot. to Dismiss, Ex. 2, ¶ 4. Discussing her planned trip to the May 2011 wedding, Scherr states that, if the rooms were safe, she "would be willing to stay at the Marriot Courtyard hotel in Overland Park on this occasion." Id. ¶ 15; see Best W. Encina Lodge & Suites, 538 F.3d at 1039, n.9 (establishing that the plaintiff had a "concrete plan to return" when she "knew of a specific upcoming trip to the area, and had already begun to plan for it, at the time that the complaint was filed").

At the motion to dismiss stage – and considering that "courts should resolve doubts about such [standing] questions in favor of disabled individuals," Dudley v. Hannaford Bros. Co., 333 F.3d 299, 307 (1st Cir. 2003) – Scherr has alleged enough to establish standing to seek injunctive relief against the Overland Park Marriot. See Pickern, 293 F.3d 1133 (finding standing where plaintiff had encountered barriers at a grocery store and stated that he would shop there again if it were accessible); Doran, 524 F.3d at 1040 (granting standing where plaintiff visited defendant store in the past, is currently deterred from visiting the store because of accessibility barriers, and planned to visit the city in which the store is located at least once a year); Best W. Encina Lodge & Suites, 538 F.3d at 1037 (finding standing where plaintiff demonstrated intent to return to the city where the hotel was located and, upon return, her desire to stay at the hotel if it is made accessible); see also Fiedler, 683 F. Supp. 2d at 69 (holding that a plaintiff has standing to sue a hotel in Bar Harbor, Maine when he "has never travelled to Bar Harbor before and has no friends or family there, but claims that he plans to spend a summer vacation [there] and to stay at the [defendant hotel] if or when it is brought into compliance with the ADA"); D'lil v. Stardust Vacation Club, No. 00-C-1496, 2001 WL

1825832, at *4 (E.D. Cal. Dec. 21, 2001) ("Based on [plaintiff's] stated intention to return [to the hotel], her history of travel to [the region], and her particular reasons for seeking accommodation at the [hotel], the court finds that [plaintiff] has alleged sufficient facts to establish standing at the summary judgment stage."); Access 123, Inc. v. Markey's Lobster Pool, Inc., No. 00-C-382, 2001 WL 920051, at *3 (D.N.H. Aug 8, 2001) (finding actual injury for purposes of standing where restaurant was located in town where plaintiff's sister lived, plaintiff was aware of barriers in access to restaurant, and plaintiff stated he would return if the barriers were removed); Ass'n. for Disabled Ams. v. Claypool Holdings, No. IP00-0344-C-T/G, 2001 WL 1112109, at * 20 (S.D. Ind. Aug. 6, 2001) (finding standing where plaintiff visited the Indianapolis area at least one time per year for family occasions and expressed a desire to stay at defendant's Indianapolis hotel on future visits).

### 2. No Standing to Sue the Additional Fifty-Six Courtyard Marriot Hotels

Scherr also claims that she has standing to seek injunctive relief against "approximately 56 additional Marriot Courtyard hotels" throughout the United States. Compl. ¶ 1. Scherr argues that, under Title III, she need not engage in the "futile gesture" of visiting all fifty-seven Courtyard Marriot hotels so long as she has "actual notice" that Marriot does not intend to comply with the ADA. 42 U.S.C. § 12188(a)(1). Scherr believes that she meets this standard because she is challenging a centralized design decision by Marriot's corporate managers that altered all fifty-seven renovated Courtyard Marriot hotels in the same manner.

Marriot, by contrast, argues that Scherr's centralized design theory is nothing more then an attempt to disregard constitutional standing principles. According to

Marriot, Scherr "cannot obtain injunctive relief at facilities where she has never personally encountered accessibility barriers and has no knowledge of the existence, much less any supposed non-compliance, of any door-closing mechanisms." Reply in Supp. of Def's Mot. to Dismiss 2. The Court finds that, on this record, Scherr does not have standing to pursue injunctive relief against the additional fifty-six hotels.

As set forth above, Scherr suffers a cognizable injury under the ADA if she is aware of existing barriers at a public accommodation, would return to the accommodation if the barriers were removed, and intends to return to the area in which the accommodation exists. Contrary to Scherr's argument, the "futile gesture" provision does not alter these requirements. See Steger, 228 F.3d at 892 ("Although plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying . . . they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers." (citing Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. at 180-84)).

Scherr asserts that between May 2006 and May 2010, she took eleven trips (in addition to her four trips to Overland Park) to locations throughout the United States. During those eleven trips, Scherr stayed at approximately twenty different hotels, only one of which was a Courtyard Marriot, in Highland Park, Illinois. While Scherr's allegation of a common architectural defect may be enough, at the motion to dismiss stage, to show awareness of existing barriers at the additional fifty-six hotels, she does not satisfy the other "deterrent effect" requirements. Scherr does not allege that she was deterred from visiting a Courtyard Marriot on these eleven trips or that she would visit a particular Courtyard Marriot in the future but for the alleged barriers. Further, she does

not establish an intent to return to any geographic area in the United States (besides Overland Park) in which a Courtyard Marriot exists. The fact that she often travels the country and stays at hotels resembling the Courtyard Marriot is simply not enough to show actual injury. Without more, Scherr's request for nationwide injunctive relief goes too far.[7]

In sum, at this stage of the litigation, the Court credits Scherr's assertion that, at the time she filed this case, she would have returned to the Overland Park Marriot if the alleged ADA-violations were corrected. Aware of the congressional mandate not to overburden ADA claimants, and consistent with the Supreme Court's directive to take a broad view of standing in civil rights cases, the Court concludes that Scherr has standing to proceed against the Overland Park Marriot, but not against the additional fifty-six Courtyard Marriot hotels.

### C. Statute of Limitations

While a plaintiff generally is not required to anticipate or negate possible affirmative defenses in her complaint, a court may dismiss a complaint for failure to state a claim if the allegations in the complaint reveal that the claim is barred by the applicable statute of limitations. Limestone Dev. Corp. v. Vill. of Lemont, IL., 520 F.3d 797, 802 (7th Cir. 2008).

---

[7] Other courts, although not applying the "deterrent effect" approach, have come to similar conclusions. See Hilton Hotels Corp., No. 07-C-1528, 2009 WL 6067336 (finding standing to sue three hotels when plaintiffs sued 2,869 hotels, had actual knowledge of violations at twenty-four hotels, but only demonstrated a desire to return to three); Moreno v. G&M Oil Co., 88 F. Supp. 2d 1116, 1117-18 (C.D. Cal. 2000) (holding that a plaintiff who sued eighty-two gas stations owned by defendant had standing to sue only the single gas station in which he was injured); Moyer v. Walt Disney World Co., 146 F. Supp. 2d 1249, 1254 (M.D. Fla. 2000) (holding that plaintiff had standing to challenge ADA violations that he personally encountered but lacked standing as to facilities in which he had not been before filing the complaint).

Because the ADA does not contain a specific statute of limitations, "the most appropriate state limitations period applies." Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547, 550 (7th Cir. 1996). In the context of Title III ADA claims, the Seventh Circuit has invoked Illinois's two-year statute of limitations for personal injuries. Id. at 551. The parties do not dispute that the two-year limitations period applies.

According to Marriot, Scherr's ADA claim is time-barred because she knew of the alleged fault with the door speed and the hinge when she filed her personal injury action on March 17, 2008, more then two years before she filed this case on November 16, 2010. In response, Scherr argues that when an ADA plaintiff seeks injunctive relief over continuing violations, her cause of action continues to accrue each day the defendant remains in violation.

While the Seventh Circuit has not addressed this issue, Scherr's position finds support in the ADA and the "deterrent effect doctrine" case law. Injunctive relief under Title III of the ADA is available to "any person who *is being subjected to* discrimination on the basis of disability" or who has "reasonable grounds for believing that such person *is about to be subjected to* discrimination." 42 U.S.C. § 12188(a)(1) (emphasis added). "By employing the phrases 'is being subjected to' and 'is about to be subjected to,' the statute makes clear that either a continuing or a threatened violation of the ADA is an injury within the meaning of the Act." Pickern, 293 F.3d at 1136. Therefore, a plaintiff suffers injury under the ADA if she is aware of the discriminatory conditions at a public accommodation and is thereby deterred from visiting that accommodation. Id. at 1136-37. "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues" such that the

statute of limitations does not bar relief. Id. at 1137; see also Betancourt, 732 F. Supp. 2d at 708 ("The fact that the disabled person is being deterred from visiting an establishment they would otherwise visit, even if infrequently, is an ongoing, present injury.").

As set forth above, Scherr alleges that she is currently aware of ADA violations at the Overland Park Marriot and that these violations deter her from staying at the hotel. Therefore, accepting Scherr's factual allegations as true, the statute of limitations cannot bar recovery at this phase.

**D. Failure to State a Claim**

In addition to the jurisdictional and statute of limitations challenges, Marriot argues that the Complaint should be dismissed pursuant to Rule 12(b)(6) because Scherr's assertion of ADA violations at the additional fifty-six Courtyard Marriot hotels is speculative. According to Marriot, even if the Court assumes the additional fifty-six hotels utilized the same spring hinges in their ADA-accessible bathroom doors, "there is no plausible allegation in the Complaint that any of the doors suffer from the same (alleged) defect, namely 'non-compliant closing speeds.'" Def.'s Mot. to Dismiss 14. Marriot does not argue that Scherr fails to state a claim with respect to the Overland Park Marriot and the Court finds, construing the Complaint in the light most favorable to Scherr and accepting as true all well-pleaded facts alleged, that Scherr's allegations give rise to a cause of action under the ADA against the Overland Park Marriot.

Because the Court finds that Scherr does not have standing to proceed against the additional fifty-six Courtyard Marriot hotels, it need not address Marriot's argument that the claims against those hotels be dismissed under Rule 12(b)(6).

## III. CONCLUSION

Scherr's allegations are sufficient, at the motion to dismiss stage, to justify moving forward with respect to injunctive relief against the Overland Park Marriot. With respect to the additional fifty-six Courtyard Marriot hotels, Marriot's motion to dismiss is granted. Following further discovery, the parties are free to once again raise the issues in this motion if appropriate.

For the foregoing reasons, Marriot's motion is granted in part and denied in part.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: June 29, 2011