# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARJORIE FRIEDMAN SCHERR, | ) | |
| | ) | 10 C 7384 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARRIOT INTERNATIONAL, INC., ET AL. | ) | Hon. Charles R. Norgle |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is Defendants Marriot International, Inc., Courtyard Management Corporation, Courtyard II Associates, LP, and Marriot International Design and Construction Services, Inc.'s (collectively, "Marriot") Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). For the following reasons, Marriot's motion is granted.

## I. INTRODUCTION

### A. Facts

On March 19, 2006, Plaintiff Marjorie Friedman Scherr ("Scherr") was injured when she was struck by a "self-closing spring-hinged bathroom door" ("Door") in Room 143 – a purportedly ADA-accessible guestroom – in the Courtyard Marriot Hotel in Overland Park, Kansas ("Overland Park Marriot"). Compl. ¶ 2. The sole issue in this case is whether the Door is in compliance with Americans with Disabilities Act ("ADA") regulations governing door closing speeds.

Marriot commenced a renovation project at the Overland Park Marriot in 2004 in which it "chose to design and install a spring-hinged door closer without a delay

mechanism in place of a door closer on the bathroom door of each purportedly 'ADA-accessible' guestroom." Id. ¶ 35. There is no dispute that the device used to automatically close the Door ("Closing Device") contains a "Spring Hinge." Scherr alleges that Marriot "chose to use a spring-hinged door closer rather than a hydraulic/spring–arm type door closer," id. ¶ 36, that the injury occurred when she "attempted to exit through an internal door on a self-closing spring hinge," id. ¶ 42, and that "[i]n the case of the bathroom door in Room 143, the spring hinge does not allow sufficient time under ADA-requirements," id. ¶ 73. See also Scherr v. Marriot Int'l, Inc., No. 08-C-2098, 2010 WL 4167487, at *5 (N.D. Ill. Oct. 13, 2010) ("[Scherr] exited the bathroom through a spring-hinged door.").

The Court takes judicial notice of the Door's basic description, as provided through expert reports in the related personal injury action. See Scherr, 2010 WL 4167487, at *5. The door weighs approximately 36.5 pounds and is supported by three hinges, which each measure about 4.5 inches in length. The center hinge is the Spring Hinge, while the upper and lower hinges are ball bearing type hinges. The Spring Hinge is "labelled 'Door Closer' and bears markings of a certification by Underwriters Laboratories, Inc. (UL), an independent product safety organization." Compl. ¶ 67.

The Door's closing speeds were measured during the personal injury litigation. See Scherr, 2010 WL 4167487, at *5.[1] Here, Scherr alleges that "[w]hen initially opened to 70°, the door takes 2.58 [seconds] to reach a distance of 3" from the latch." Compl. ¶ 62.

---

[1] On summary judgment, the court found that "a fact question exists regarding whether the hotel door took less than three seconds to close from an open position at 70 degrees. Although Scherr's expert, Ellen Lee, measured the closing time of the Room 143 bathroom door as 2.58 seconds, defense expert Gregory Wisniewski reported measurements between 2.8 and 3.1 seconds, and defense expert Daniel Wojonowski reported measurements as high as 3.17 seconds." Scherr, 2010 WL 4167487, at *5.

2

In other words, from a position of 70 degrees, the Door takes at least 2.58 seconds to fully close. For purposes of this motion, Marriot does not dispute this allegation.

As set forth below, ADA regulations contain separate provisions governing permissible closing speeds for "Door Closers" and Spring Hinges. There is no dispute that the Closing Device is compliant with the Spring Hinge provision but not the Door Closer provision. The central dispute in this case is whether the Closing Device must comply with the Door Closer provision.

**B. Procedural History**

Scherr filed a personal injury action in the Circuit Court of Cook County on March 17, 2008. Marriot removed the case to the Northern District of Illinois (Kennelly, J.) based on diversity of citizenship. On July 26, 2010, Scherr moved to amend her personal injury complaint to include a claim under Title III of the ADA. Her request was denied. Judge Kennelly denied the parties' motions for summary judgment on October 13, 2010, and the case subsequently settled.

On November 16, 2010, prior to the settlement, Scherr filed the instant ADA case against Marriot. Pursuant to Title III of the ADA, Scherr requests: (1) a declaratory judgment that the Overland Park Marriot was and remains in violation of the ADA; (2) injunctive relief against Marriot, including an order requiring Marriot to alter the self-closing spring-hinged doors in ADA-accessible rooms in fifty-seven of its Courtyard hotels throughout the United States (including the Overland Park Marriot); and (3) costs, attorneys' fees, and expenses.

On January 18, 2011, Marriot moved to dismiss the case for lack of jurisdiction and failure to state a claim. On June 29, 2011, the Court found that Scherr's allegations were

sufficient to warrant moving forward against the Overland Park Marriot, but not the additional fifty-six Courtyard Marriot hotels. See Scherr v. Marriot Int'l, Inc., No. 10-C-7384, 2011 WL 2606184 (N.D. Ill. June 29, 2011). Marriot now moves for a judgment on the pleadings pursuant to Rule 12(c).

## II. DISCUSSION

### A. Standard of Decision

Rule 12(c) permits judgment based on the pleadings alone, which includes the complaint, the answer, and any written instruments attached as exhibits. Moss v. Martin, 473 F.3d 694, 698 (7th Cir. 2007). The Court reviews Rule 12(c) motions "by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted). Thus, the Court takes all well-pleaded allegations in the complaint as true, views the facts in the complaint in the light most favorable to the nonmoving party, and will grant the motion "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support [her] claim for relief." Id. (quotation omitted). While the Court must construe the facts in the light most favorable to Scherr, it is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 452 (7th Cir. 1998) (quotation omitted). "The Court may take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from the prior proceedings." Hernandez ex rel. Gonzalez v. Tapia, No. 10-CV-4124, 2010 WL 5232942, at *3 (N.D. Ill. Dec. 15, 2010) (citing Gen. Elec. Capital Corp. v. Lease Res. Corp., 128 F.3d 1074, 1081-82 (7th Cir. 1997)); see also Baker v. Potter, 175 F. App'x 759, 762 (7th Cir. 2006)

4

(holding on a Rule 12(c) motion that the district court properly took judicial notice of the decision by a judge in a previous lawsuit). The Court takes judicial notice of the general description of the door as well as the orders and opinions in the related personal injury action.

**B. Marriot's Motion for Judgment on the Pleadings**

*1. Regulatory Context*

Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation and requires newly constructed or altered places of public accommodation to comply with the ADA standards for accessible design. 42 U.S.C. §§ 12181-89. Congress delegated to the Department of Justice ("DOJ") the responsibility for issuing regulations in order to enforce Title III. See 42 U.S.C. § 12186(b). These regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board ("Access Board"). See 42 U.S.C. § 12186(c). The Access Board's guidelines are known as the Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

On July 26, 1991, the DOJ issued the first set of ADA Standards for Accessible Design [hereinafter 1991 Standards]. See 56 Fed. Reg. 35,546 (July 26, 1991); 28 C.F.R. Pt. 36, App. A. On July 23, 2004, the Access Board issued substantial revisions to the 1991 Standards. 69 Fed. Reg. 44,084 (July 23, 2004) [hereinafter 2004 ADAAG]. The DOJ adopted the 2004 ADAAG into its enforceable regulations on September 15, 2010 [hereinafter 2010 Standards].

On March 15, 2012, compliance with the 2010 Standards will be required for new construction and alterations. As relevant here, in the period between September 15,

2010, and March 15, 2012, covered entities may choose either the 1991 Standards or the 2010 Standards. See U.S. Department of Justice, 2010 ADA Standards for Accessible Design (2010); see also Norkunas v. Tar Heel Capital Wendy's LLC, No. 5:09-CV-00116, 2011 WL 2940722, at *5 (W.D.N.C. July 19, 2011). As the parties agree, both the 1991 and 2010 Standards can be used to evaluate compliance as a matter of law in this case.

Section 9 of the 1991 Standards – which sets forth requirements for accessible transient lodging (such as hotels) – mandates that "[d]oors and doorways designed to allow passage into and within all sleeping rooms, suites or other covered units shall comply with 4.13." 1991 Standards § 9.2.2(3). Subsection 4.13, in turn, provides in relevant part:

> **4.13.10 Door Closers.** If a door has a closer, then the sweep period of the closer shall be adjusted so that from an open position of 70 degrees, the door will take at least 3 seconds to move to a point 3 in (75mm) from the latch, measured to the leading edge of the door.

1991 Standards § 4.13.10. The appendix to the 1991 Standards further states:

> **A4.13.10 Door Closers.** Closers with delayed action features give a person more time to maneuver through doorways. They are particularly useful on frequently used interior doors such as entrances to toilet rooms.
> . . .
> **A4.17.5 Doors.** To make it easier for wheelchair users to close toilet stall doors, doors can be provided with closers, spring hinges, or a pull bar mounted on the inside surface of the door near the hinge side

1991 Standards §§ A4.13.10, A4.17.5 (emphasis added). The 1991 Standards do not contain a separate closing speed regulation for Spring Hinges. By contrast, the 2010 Standards – without comment or explanation – set forth separate closing speed specifications for Spring Hinges and Door Closers. In full, the 2010 Standards regulating door closing speeds provide:

6

> **404.2.8 Closing Speed.** Door and gate closing speed shall comply with 404.2.8.
>
> **404.2.8.1 Door Closers and Gate Closers.** Door closers and gate closers shall be adjusted so that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum.
>
> **404.2.8.2 Spring Hinges.** Door and gate spring hinges shall be adjusted so that from the open position of 70 degrees, the door or gate shall move to the closed position in 1.5 seconds minimum.

2010 Standards § 404.2.8. It is undisputed that the Closing Device is in compliance with § 404.2.8.2 but not with § 404.2.8.1. It is further undisputed that the Closing Device was operated by a Spring Hinge, Compl. ¶¶ 2, 35, 36, 42, 73, and that it did not contain a "delayed action feature," id. ¶¶ 35, 62. The issue, therefore, is whether the Closing Device must comply with 404.2.8.1, the provision regulating Door Closers.

### 2. *Regulation of the Closing Device Under § 404.2.8*

Scherr first argues that, as a matter of law, the Closing Device must comply with both the Spring Hinge and Door Closer provisions of the 2010 Standards. To Scherr, "compliance with both applicable standards is not only possible, it is required." Pl.'s Opp'n to Def's Mot. for J. on the Pleadings 3 [hereinafter Pl.'s Opp'n]. This is purely a question of law and appropriate to decide at this stage. Bammerlin v. Navistar Int'l Trans. Corp., 30 F.3d 898, 900 (7th Cir. 1994) ("The meaning of federal regulations is not a question of fact . . . [i]t is a question of law, to be resolved by the court.").

As in all statutory construction cases, the Court begins with "'the language itself [and] the specific context in which that language is used.'" McNeill v. U.S., 131 S. Ct. 2218, 2221 (2011) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)). If the language is plain, "our only function is to enforce it according to its terms." Greenfield

Mills, Inc. v. Macklin, 361 F.3d 934, 954 (7th Cir. 2004) (quotation omitted). "[A]bsent statutory definitions, we accord words and phrases their ordinary and natural meaning and avoid rendering them meaningless, redundant, or superfluous; we view words not in isolation but in the context of the terms that surround them; we likewise construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant; we favor the more reasonable result; and we avoid construing statutes contrary to the clear intent of the statutory scheme." In re Merchants Grain, Inc., 93 F.3d 1347, 1353-54 (7th Cir. 1996) (citations omitted). "When Congress provides specific statutory obligations, we will not read a 'catchall' provision to impose general obligations that would include those specifically enumerated." U.S. v. Jicarilla Apache Nation, 131 S. Ct. 2313, 2330 (2011) (citation omitted). This Court is "hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." Id. (quotation omitted).

These well-settled rules of statutory construction and interpretation work against Scherr's contention that, as a matter of law, the Closing Device should be treated as both a Door Closer and a Spring Hinge. The most reasonable interpretation of the regulation requires separate treatment of Door Closers and Spring Hinges. As § 404.2.8 governs "closing speed," there can be no dispute that both Spring Hinges and Door Closers can function, literally, to close doors. Unlike the 1991 Standards, the DOJ elected to adopt as part of the 2010 Standards a separate regulation specifically applicable to the closing speed of spring-hinged door closing devices. There is nothing within the text of 2010 Standards to suggest that the DOJ intended for such spring-hinged devices to be regulated under the separate Door Closer provision. Indeed, the appendix to the 1991 Standards

suggests that the DOJ viewed Spring Hinges and Door Closers as separate and distinct devices. See 1991 Standards § A4.17.5 (distinguishing "closers" from "spring hinges"). If the DOJ intended to regulate the closing speed of Spring Hinges under the Door Closer provision, there would be little need for the separate standard specifically regulating Spring Hinges. The Court must apply the more precise regulation, tailored specifically to the closing speed of Spring Hinges. See, e.g., In re Gulevsky, 362 F.3d 961, 963 (7th Cir. 2004).

Scherr contends that compliance with both provisions is required because each specifies a minimum closing speed measured from a different reference point (Door Closers in 5 seconds minimum from 90 to 12 degrees and Spring Hinges in 1.5 seconds minimum from 70 degrees to closed). Attempting to illustrate that her interpretation would not render the Spring Hinge provision meaningless or superfluous, Scherr offers a hypothetical in which a door could comply with the Door Closer provision but violate the minimum closing speed for Spring Hinges. The fact that such a result may be possible as a matter of physics is not enough to find that the DOJ intended for the two separate provisions to operate as if they were one. As Marriot explains, the scenario in which a door complies with the Door Closer but not the Spring Hinge provision is an extremely narrow and unlikely one. If § 404.2.8.1 applied to Spring Hinges, for all practical purposes it would swallow § 404.2.8.2, rendering it virtually meaningless. It is well established that a regulation generally should not be construed to render any other provision meaningless or superfluous. Jicarilla Apache Nation, 131 S. Ct. at 2330; see also In re Willett, 544 F.3d 787, 792 (7th Cir. 2008).

9

Scherr's argument that the prefatory clause requires compliance with both subsections is also unavailing. The prefatory clause simply states that "[d]oor and gate closing speeds shall comply with 404.2.8." 2010 Standards § 404.2.8. Section 404.2.8 sets forth two requirements, one for Door Closers and one for Spring Hinges. The Court construes this to mean, quite simply, that Door Closers must comply with the Door Closer provision and Spring Hinges with the Spring Hinge provision.

This interpretation is supported by looking to the similar "shall comply with" language in other prefatory clauses in § 404. Section 404 governs doors, doorways, and gates. Section 404.1 provides that "Doors, doorways, and gates that are part of an <u>accessible</u> route <u>shall comply with</u> 404." 2010 Standards § 404.1 (second emphasis added). Section 404.2 governs manual doors, doorways, and manual gates whereas § 404.3 governs automatic and power-assisted doors and gates. Clearly, the "shall comply with" language set forth in § 404.1 does not require the automatic doors regulated under § 404.3 to comply with the manual door regulations in § 404.2.

Section 404.2.4 lends further support to this interpretation. Section 404.2.4 provides that "[m]inimum maneuvering clearances at doors and gates <u>shall comply with</u> 404.2.4." 2010 Standards § 404.2.4 (emphasis added). The subsections that follow establish separate and distinct maneuvering clearance requirements – set forth in detailed tables and diagrams in each subsection – depending on the type of door or gate: (i) swinging doors and gates (§ 404.2.4.1); (ii) doorways without doors or gates, sliding doors, and folding doors (§ 404.2.4.2); and (iii) recessed doors and gates (§ 404.2.4.3). Under § 404.2.4, therefore, the applicable subsection depends on the type of doorway, be it swinging, sliding, recessed or otherwise. As Scherr concedes, the "shall comply with"

prefatory clause notwithstanding, there is no requirement that these different types of doorways must comply with the entirety of § 404.2.4.[2]

The "shall comply with" language in § 404.2.8 must be construed in the same manner. Section 404.2.8 regulates door closing speeds and the applicable subsection must depend on which type of closing device – Spring Hinge or Door Closer – is used. Just as the "shall comply with" language in § 404.2.4 does not require compliance with the entire section, neither does the "shall comply with" language in § 404.2.8 require each device to comply with both standards.

For these reasons, the Court finds that the spring-hinged Closing Device need not comply with the Door Closer regulation. In so finding, the Court does not ignore Scherr's argument that Marriot's interpretation of § 404.2.8 runs counter to the purpose and intent of the 2010 Standards and the ADA – namely, to ensure that disabled individuals have access and safe passage to public accommodations. Scherr points out that Marriot does not argue, let alone suggest, that the Door is actually safe for physically disabled guests. In her words, "a door equipped with a spring hinge device designed to make the door close from 70 degrees in 1.5 seconds is not (magically) as safe for disabled persons as a non-'spring hinge' door closer designed to close the door from 90 to 12 degrees in a minimum of 5 seconds." Pl.'s Opp'n 21. Scherr appears to have identified a

---

[2] Scherr's argument that the subsections in § 404.2.4 are not mutually exclusive because of § 4.4.2.4.4 is unavailing. As set forth above, the first three subsections under§ 404.2.4 specifically address different types of doorways. By contrast, § 404.2.4.4 regulates surfaces (not doors) and simply states that "[f]loor or ground surface within required maneuvering clearances shall comply with 302." Section 302 requires floor and ground surfaces to be stable, firm, and slip resistant. That § 404.2.4.4 requires all surface areas within required clearances to comply with § 302 does not mean the first three subsections – each regulating different kinds of doors – become interdependent. As Scherr concedes, there is no requirement under § 404.2.4 that all of the different doorways must comply with the entire section.

legitimate public safety concern within the 2010 Standards. As the facts and expert testimony in the personal injury case demonstrate, it is far from certain that a 1.5 second closing speed for Spring Hinges is safe for people with disabilities such as Scherr's. Indeed, common sense and practical experience suggest that 1.5 seconds may not be sufficient to ensure such individuals safe passage through doorway thresholds. Unfortunately for Scherr, § 404.2.8.2 is now the law. The Court cannot construe § 404.2.8.2 in Scherr's favor when, as set forth above, other principles of statutory construction strongly support Marriot's position. As Marriot suggests, Scherr's issue with respect to § 404.2.8.2 is not with Marriot as much as with the federal regulators.[3]

Finally, Scherr's alternative argument – that even though the Closing Device has a Spring Hinge, it is factually a Door Closer pursuant to § 404.2.8.1 – is without merit. Her argument relies on the "Door Closer" marking engraved on the hinge, references to the device as a Door Closer in various sales materials and articles, and testimony from the related personal injury case. Pl.'s Opp'n 16-17. In Scherr's words, "[a] door closing device that is labeled and certified as a door closer falls within the ambit of ADA regulations over compliant door closers." Compl. ¶ 67.

While the Court must construe the facts in the light most favorable to Scherr, it cannot ignore the facts set forth in the complaint that undermine her claim. See N. Ind. Gun & Outdoor Shows, Inc., 163 F.3d at 452. The problem for Scherr is her repeated assertion that the Closing Device functions by way of a Spring Hinge. As set forth above, the Court finds that the 2010 Standards regulate closing speeds differently,

---

[3] That said, the Court notes Scherr's position that, by installing a closing device that complies with § 404.2.8.1, Marriot could have mooted this issue a long time ago. See, e.g., Norkunas, 2011 WL 2940722, at *3 ("Federal courts have dismissed ADA claims as moot when the alleged violations have been remedied after the initial filing of a suit seeking injunctive relief.").

12

depending on whether the device at issue employs a Spring Hinge. As Marriot argues, what the manufacturer, an organization, a salesman, or even Marriot itself call the Closing Device is not controlling. What is dispositive is whether the DOJ intended to regulate closing devices with Spring Hinges under the Door Closer provision. As set forth above, the Court finds that it did not. Put simply, § 404.2.8 contains two separate provisions, one regulating Spring Hinges, the other regulating Door Closers. Both devices function, literally, to close doors. Scherr has alleged that the Closing Device operates by way of a Spring Hinge, and that is enough. The fact that the Closing Device is labeled "Door Closer" or functions literally to "close the door" does not translate it – legally – into a Door Closer within the meaning of § 404.2.8.1.[4]

---

[4] Scherr also alleges that Marriot is in violation of a twelve-inch clearance requirement for Door Closers. Compl. ¶ 36. Because the Court finds that the Closing Device is not regulated as a Door Closer, this argument, which is undeveloped in Scherr's briefs, is rejected.

## III. CONCLUSION

Scherr seeks prospective injunctive relief and Marriot has demonstrated that, under the facts alleged in the Complaint, it is in compliance with the 2010 Standards. Because the 2010 Standards specifically and expressly regulate Spring Hinges separate and apart from Door Closers, and because the Complaint concedes that the Closing Device is spring-hinged and in compliance with closing speeds set forth in § 404.2.8.2, Marriot's Rule 12(c) motion for judgment on the pleadings is granted and the case is dismissed.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: December 1, 2011